# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### MACON DIVISION

| | |
|---|---|
| JOHN THOMPSON and LEIGH ANN THOMPSON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | **C.A. NO. 5:14-cv-00032 (MTT)** |
| TONYA LONG and JASON LONG, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Defendant. | **C.A. No. 5:17-cv-0028 (MTT)** |

## <u>ORDER</u>

WHEREAS, Plaintiffs John and Leigh Ann Thompson, on behalf of themselves and a

settlement class of similarly-situated persons (defined below as the "Thompson Settlement Class"),

Tonya and Jason Long, on behalf of themselves and a settlement class of similarly-situated persons

(defined below as the "Long Settlement Class") and Defendant State Farm Fire and Casualty

Company entered into a Settlement Agreement[1] dated May 8, 2018; and

WHEREAS, the Court entered an Order on August 10, 2018 ("Preliminary Approval

---

[1] Unless otherwise specifically defined herein, the capitalized terms in this Order Approving Settlement have the same meaning as attributed to them in the Settlement Agreement.

Order"), approving consolidation of the Actions for purposes of settlement under Federal Rule of Civil Procedure Rule 42, preliminarily approving the Settlement, preliminarily certifying the Settlement Classes for settlement purposes under Federal Rule of Civil Procedure Rule 23(b)(3), ordering that notice be disseminated to the Settlement Classes, scheduling a Fairness Hearing for January 7, 2019, and providing Settlement Class Members with an opportunity to opt-out of the Settlement Class and/or object to the proposed Settlement or to Class Counsel attorneys' fees and costs and/or the Plaintiffs' incentive awards; and

WHEREAS, the Court held a Fairness Hearing on January 7, 2019, to determine whether to grant final approval to the Settlement Agreement; and

WHEREAS, the Court is contemporaneously issuing a Judgment that, among other things, certifies the Settlement Classes, approves the Settlement Agreement, and dismisses the Settlement Class Members' claims with prejudice as to State Farm;

NOW THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      **Incorporation of Settlement Documents.**  This Order Approving Settlement (the "Order") incorporates and makes a part hereof the Settlement Agreement, including all exhibits thereto.  The Settlement Agreement and all exhibits thereto shall be referred to collectively as the "Settlement Agreement."

2.      **Jurisdiction**.  The Court has personal jurisdiction over all Settlement Class Members (as defined below) and has subject matter jurisdiction over these Actions, including, without limitation, jurisdiction to consolidate the Actions for settlement purposes, approve the Settlement Agreement, grant final certification of the Settlement Class for settlement purposes, and dismiss the Actions with prejudice.

3.      **Final Settlement Class Certification and Definition.**  The Settlement Classes this Court preliminarily certified are hereby finally certified for settlement purposes under Federal Rule

of Civil Procedure Rule 23(b)(3).  The Settlement Classes are defined as follows:

"Thompson Settlement Class" means all current and former policyholders insured under a State Farm homeowners insurance policy that provided coverage for property located in the State of Georgia, who presented Coverage A-Dwelling Claims with dates of loss between January 22, 2008 and January 24, 2017, which Claims were coded with Cause of Loss Codes 17 (flood), 37 (water), and 47 (back-up of sewer or drain), but excluding (a) Class Counsel and (b) any person who makes a timely election to be excluded from the Thompson Settlement Class as provided in this Agreement.

"Long Settlement Class" means the combined categories of persons with "Long Water Loss Claims" and "Long Non-Water Loss Claims," defined below, but excluding (a) Class Counsel and (b) any person who makes a timely election to be excluded from the Long Settlement Class as provided in this Agreement.

"Long Water Loss Claims" means Claims by all current and former policyholders insured under a State Farm homeowners insurance policy that provided coverage for property located in the State of Georgia, who presented Coverage A-Dwelling Claims with dates of loss between January 25, 2017 and February 4, 2018, which Claims were coded with Cause of Loss Codes 17 (flood), 37 (water), and 47 (back-up of sewer or drain), and which claims were reported to State Farm on or before February 4, 2018.

"Long Non-Water Loss Claims" are Claims by all current and former policyholders insured under a State Farm homeowners insurance policy that provided coverage for property located in the State of Georgia, who presented Coverage A-Dwelling Claims with dates of loss between January 25, 2011 and February 4, 2018, which Claims were coded with Cause of Loss Codes other than 17 (flood), 37 (water), and 47 (back-up of sewer or drain), were reported to State Farm on or before February 4, 2018, and which fall into  one of the following categories:    (a) fire Claims, as indicated by Cause of Loss Code  33; (b) wind / hail Claims, as indicated by Cause of Loss Code 35; (c) Claims which include Reason Code M (remediation of mold) or which contain a payment under the "Fungus (including mold) endorsement"; and (d) Claims with foundation repairs included on the Xactimate estimate(s) prepared by State Farm.

"Settlement Classes" as used herein refers to the Thompson Settlement Class and the Long Settlement Class combined. "Settlement Class Members" as used herein means all members of the combined Thompson Settlement Class and the Long Settlement Class.

4.      **Issue for Certification.**  The issue that the Court is deciding on a class-wide basis is whether the terms of the proposed Settlement are fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure Rule 23(e) and governing law construing that Rule.  In making that determination, the Court also has considered, as discussed herein, whether proper notice of the

Proposed Settlement was given under Federal Rule of Civil Procedure Rule 23(c)(2)(B) and Federal Rule of Civil Procedure Rule 23(e)(1) to the Settlement Class and any other relevant persons so that the Settlement Agreement's terms will have binding effect.

5. **Adequacy of Representation.** The Plaintiffs and Class Counsel have fully and adequately represented the Settlement Classes for purposes of entering into and implementing the Settlement Agreement and have satisfied the requirements of Federal Rule of Civil Procedure Rule 23(a)(4).

6. **Notice.** The Court finds that the distribution of the Notice and the notice methodology were implemented in accordance with the terms of the Settlement Agreement and this Court's Preliminary Approval Order. The Court further finds that the Notice was simply written and readily understandable, and that the Notice and notice methodology: (a) constituted the best practicable notice; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of the consolidation and pendency of the Actions and the claims in the Actions, their rights to object to the proposed settlement and to appear at the Fairness Hearing, and their right to exclude themselves from the Settlement Classes; (c) were reasonable and constituted due, adequate, and sufficient notice to all persons entitled to notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other applicable law.

7. **Final Settlement Approval.** The terms and provisions of the Settlement Agreement have been entered into in good faith and are hereby fully and finally approved as fair, reasonable, and adequate as to, and in the best interests of, the Plaintiffs and the Settlement Class, and in full compliance with all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Rules of the Court, and any other

4

applicable law.  The Settling Parties and their counsel are hereby directed to implement and consummate the Settlement Agreement according to its terms and provisions.

8.    **Findings in Support of Settlement Approval.**    In weighing final approval of a class settlement, the Court's role is to determine whether the settlement, taken as a whole, is "fair, adequate and reasonable and . . . not the product of collusion between the parties." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (internal quotation marks and citations omitted); *Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 (11th Cir. 1994).  To aid in this determination, courts in this Circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and duration of litigation; (3) the stage of the proceedings at which the settlement was achieved and the amount of discovery completed; (4) the probability of the plaintiff's success on the merits; (5) the range of possible recoveries and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition to the settlement.  *See Leverso*, 18 F.3d at 1530 n.6; *Bennett*, 737 F.2d at 986.  "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'"  *Lipuma v. Am. Express Co.*, 406 F.Supp.2d 1298, 1315 (S.D. Fla. 2005) (quoting *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991)); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d 1329, 1333 (N.D. Ga. 2000) (same).  Application of these factors in this case supports final approval of the Settlement:

a. The Court must consider whether a proposed settlement is "the product of collusion between the parties."  *Bennett*, 737 F.2d at 986 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).  "There is a presumption of good faith in the negotiation process. . . .  Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion. . . .  Further, where the case proceeds adversarially, this counsels against a finding of collusion."  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 692 (S.D. Fla. 2014)

(citations omitted); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001). Here, there is no claim of fraud or collusion. The Settlement is the product of hard-fought, arm's-length negotiations by capable and experienced counsel. Thus, there is a presumption that the Settlement is fair and reasonable. The Settlement was informed by Class Counsel's thorough investigation and discovery (both formal and informal) regarding relevant issues, and the terms of the Settlement were negotiated over several months. *See Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (showing a record "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981) ("[T]he trial court may legitimately presume that counsel's judgment 'that they had achieved the desired quantum of information necessary to achieve a settlement,' . . . is reliable.") (citations omitted). In addition, litigation of the action was vigorous and adversarial, with State Farm having filed several dispositive motions and denying liability and Class Members' entitlement to damages. Accordingly, this factor weighs heavily in favor of final approval of the Settlement.

b. "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." 4 Newberg on Class Actions § 11:50 at 155 (4th ed. 2002). In this case, recovery by any means other than settlement likely would require additional years of litigation involving numerous expert witnesses, extensive motion practice, hearings, and appeals. State Farm has contested liability and damages throughout this litigation, having asserted numerous defenses and contending that a damages class would not be manageable if the case were to be tried. *See, e.g.*, Docs. 7; 25; 32; 34. Moreover, continued litigation of Plaintiff's claims would require a significant outlay of time and expenses for the parties over the course of several years, not to mention the consumption of significant judicial resources. *See In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992) (noting that complex

6

litigation "can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive"); *Saccoccio*, 297 F.R.D. at 693-94; *Ass'n for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 469 (S.D. Fla. 2002). In contrast, the proposed Settlement provides speedy and substantial—indeed, complete—benefits to every Class Member, while avoiding the expense and time associated with protracted litigation. *See, e.g.*, *Perez v. Asurion Corp.*, 501 F.Supp.2d 1360, 1381 (S.D. Fla. 2007) ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear."). Prompt and substantial relief to Class Members through the Settlement weighs in favor of final approval.

c. "The law is clear that early settlements are to be encouraged, and . . . only some reasonable amount of discovery should be required to make these determinations." *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992); *see also Lipuma*, 406 F. Supp. 2d at 1324 ("[V]ast formal discovery need not be taken.") (citing *Cotton*, 559 F.2d at 1332). The Settlement is informed by Class Counsel's investigation and discovery regarding relevant legal and factual issues. Class Counsel engaged in written discovery, including propounding and responding to discovery, reviewed documents produced by State Farm, and reviewed and analyzed information about Class Members' claims produced in informal discovery. The Settlement provides that all Class Members' eligible claims will automatically receive a diminished-value assessment, or the Class Members will be notified of their right to receive a diminished-value assessment with respect to their claims. These diminished-value assessments will be done pursuant to the Methodology for Assessing Thompson & Long Settlement Classes' Claims for Diminution in Value ("Assessment Methodology"), which is attached to the Settlement Agreement as Exhibit A. The Assessment Methodology ensures that the diminished-value assessments will be performed pursuant to a uniform methodology by appropriately trained personnel and, where appropriate, independent appraisers and

7

other experts. All Class Members with eligible claims have the right to challenge the findings of any assessment. Class Counsel's analysis and understanding of various legal obstacles was also informed by their work in a similar case that was previously closed. *See CHIS, LLC v. Peerless Indemnity Ins. Co.*, 2016 WL 9185305 (M.D. Ga. 2016) (similar case); *Lipuma*, 406 F.Supp.2d at 1325 ("Information obtained from other cases may be used to assist in evaluating the merits of proposed settlement in a different case.").

d. In assessing the reasonableness of a settlement, courts should consider the "likelihood and extent of any recovery from the defendants absent . . . settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *Ressler*, 822 F. Supp. at 1555 ("A court is to consider the likelihood of the plaintiffs' success on the merits ... against the amount and form of relief offered in the settlement before judging the fairness of the compromise."). The Settlement provides considerable relief for the Class while avoiding the risks of unfavorable rulings on these issues. Importantly, the Settlement provides that all Class Members' eligible claims will automatically receive a diminished-value assessment, or the Class Members will be notified of their right to receive a diminished-value assessment with respect to their claims. These diminished-value assessments will be done pursuant to the Assessment Methodology, which ensures that the diminished-value assessments will be performed pursuant to a uniform methodology by appropriately trained personnel and, where appropriate, independent appraisers and other experts. All Class Members with eligible claims have the right to challenge the findings of any assessment.

e. "In determining whether a settlement is fair and reasonable, the court must also examine the range of possible damages that plaintiffs could recover at trial and combine this with an analysis of plaintiffs' likely success at trial to determine if the settlements fall within the range of fair recoveries." *Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 258 F.R.D. 545, 559 (N.D. Ga. 2007). Here, the Settlement Agreement provides complete, valuable relief to the Class Members

with respect to their breach-of-contract claims and is therefore fair, reasonable, and adequate compared against the possible range of recovery. State Farm has agreed to pay for the assessments. These assessments are complete relief for the Class Members' duty-to-assess claims and provide them valuable information about whether their properties have suffered diminished value. In addition, Class Members determined to have suffered diminished value of their properties will receive full payment for the diminished value, which is complete relief for their duty-to-pay claims.

f. In considering a proposed class settlement, the Court "may rely upon the judgment of experienced counsel for the parties. . . . Absent fraud, collusion, or the like, the district court 'should be hesitant to substitute its own judgment for that of counsel.'" *Nelson v. Mead Johnson & Johnson Co.*, 484 F. App'x 429, 434 (11th Cir. 2012) (quoting *Cotton*, 559 F.2d at 1330); *Greco v. Ginn Dev. Co., LLC*, 635 F. App'x 628, 632 (11th Cir. 2015) (same); *In re Domestic Air*, 148 F.R.D. at 312-13 (same). In addition, "the reaction of the class is an important factor." *Lipuma*, 406 F. Supp. 2d at 1324. Here, Class Counsel have extensive experience litigating and settling consumer class actions and other complex matters and strongly endorse the proposed Settlement. Moreover, only 265 Class Members (0.1%) have opted out. Doc. 211 at 10. This positive response from the Class Members further evidences the fairness, reasonableness, and adequacy of the Settlement. *See Saccoccio*, 297 F.R.D. at 694 ("[A] low number of objections suggests that the settlement is reasonable."); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1338 ("The lack of objection . . . suggests the terms are satisfactory. . . ."). Furthermore, only six Class Members have purported to object to the settlement. Docs. 210; 211-2; 211-3; 212-1; 212-2.

The Court construes the first objection filed by Harry Hardaway as a request for an exclusion based on the language of the letter. Doc. 207 ("[Diminished value is] [o]bviously something made up by money hungry attorneys! . . . Thank you for removing me as a member of this lawsuit, and it is

my hope that the court will not approve settlement.")  Mr. Hardaway did not speak at the fairness hearing held on January 7, 2019.

The second objection filed by Harold Weston is an objection to the settlement not addressing the "stigma risk" associated with the Class Members' water damage to their homes.  Doc. 210.  Mr. Weston spoke at the fairness hearing to address his objections outlined in his filing.  Doc. 213.  The Court explained to Mr. Weston that the settlement gave the Class Members the right to an assessment to determine diminished value, not a right to payment.  *Id.*  The Court also explained that neither the settlement nor any Court order establishes that any property experienced diminished value because of stigma.  Mr. Weston—along with all other objectors—bears the burden of proving any assertions he raises challenging the reasonableness of a class action settlement.  *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990) ("In this circuit, we have usually imposed the burden on the party objecting to a class action settlement.  Likewise, other circuits have held that once the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid. . . .").  "[D]imunition in value damages pose great difficulties in a class action context, particularly when considering the challenge of proving such damages on a classwide basis."  *Asghari v. Volkswagen Grp. of Am., Inc.*, 2015 WL 12732462, at *26 (C.D. Cal. 2015).  The decision to not pursue such damages as part of the settlement is not unfair or unreasonable, as homeowners who have not sold their homes would likely find it difficult to prove their damages without resorting to speculation.  *Id.* (citations omitted).  "Although some class settlements have provided compensation for diminished value, courts have rejected the notion that class action settlements must provide compensation for diminished value."  *Id.*  Furthermore, Mr. Weston neither provided nor pointed to any expert testimony or other evidence showing that publicity about damage to his home due to the Court's ruling resulted in any diminished resale value.  *Id.* (citations omitted).

The third objection filed by Henry Loyd is an objection to Mr. Loyd's individual claim. Doc. 211-2. Mr. Loyd aired his grievances at the fairness hearing. Doc. 213. Class Counsel and State Farm's counsel agreed with the Court that Mr. Loyd's grievances related to the way his individual claim was handled and had nothing to do with the settlement. The fourth objection filed by Michael Oglesby is also an objection to the handling of his individual claim. Doc. 211-3. Mr. Oglesby did not speak at the fairness hearing. The Court construes Mr. Oglesby's objection as a complaint in regard to the way his individual claim was handled by State Farm, not an objection to the settlement. The fifth objection filed by Steve Thompson is merely a request to speak at the fairness hearing. Doc. 212-1. Mr. Thompson did not speak at the fairness hearing. The Court thus does not construe this as an objection. The sixth objection filed by Rosie Turner is also merely a request to speak at the fairness hearing to "prove more info." Doc. 212-2. Ms. Turner did not speak at the fairness hearing. The Court thus does not construe this as an objection.

Two more Class Members spoke at the fairness hearing. Class Member Jackie Feckoury merely asked a question regarding the settlement, which the attorneys answered. Doc. 213. Class Member James Portlock voiced an objection, and Class Counsel and State Farm's counsel agreed with the Court that Mr. Portlock's objection should be construed as a complaint regarding his individual claim, not an objection to the settlement. *Id.* Class Counsel also advised Mr. Portlock to seek an attorney to pursue his individual claim if he wanted relief. *Id.*

The objections filed or voiced at the fairness hearing are either not objections to the settlement or are not objections at all. The Court thus finds that the overall positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement.

9. **Implementation of Settlement.** Having found that the terms of the Settlement Agreement are fair, reasonable, and adequate to the Settlement Classes, the Settling Parties, through the Administrator, are directed to implement and administer the Settlement in accordance with its

terms and provisions.

10. **Binding Effect.** The terms of the Settlement Agreement and of this Order and the accompanying Judgment shall be forever binding on the Settling Parties and all non-excluded members of the Settlement Classes, as well as their heirs, executors, administrators, beneficiaries, predecessors, successors, and assigns as to all Released Claims.

11. **Releases.** The Releases as set forth in Paragraphs 45 & 46 of the Settlement Agreement are expressly incorporated herein in all respects. The Releases shall be effective as of the Final Settlement Date.

12. **No Admissions.** Neither this Order and the accompanying Judgment nor the Settlement Agreement, nor any of the provisions of the Settlement Agreement or any negotiations leading to its execution, nor any other documents referred to in this Order or the accompanying Judgment, nor any action taken to carry out this Order and the Judgment, may be offered or received in evidence in any action or proceeding in any court, administrative panel, or proceeding or other tribunal as any admission or concession of liability or wrongdoing of any nature on State Farm's part. Neither this Order and the accompanying Judgment nor the Settlement Agreement, nor any of the provisions of the Settlement Agreement or any negotiations leading to its execution, nor any other documents referred to in this Order or the accompanying Judgment, nor any action taken to carry out this Order and the Judgment is or shall be construed as an admission or concession by State Farm as to the truth of any of the allegations in the Actions or of any liability, fault, or wrongdoing of any kind on the part of State Farm.

13. **Enforcement of Settlement.** Nothing in this Order or the accompanying Judgment shall preclude any action to enforce the terms of the Settlement Agreement.

14. **Attorneys' Fees and Costs.** The Court finds that an award of attorneys' fees and costs for Class Counsel in the amount of $6.7 million is fair, reasonable and appropriate, and directs

State Farm to pay such amount to Class Counsel pursuant to the terms of the Settlement Agreement. Pursuant to the Settlement Agreement, the payment of attorneys' fees and costs is in addition to the benefits to the Settlement Classes and will not reduce the benefits obtained by, or any Diminished Value damage payments made to, the Settlement Class under the terms of the Settlement.

15. **Findings in Support of Award of Attorneys' Fees and Expenses.** It is well established that when a substantial benefit has been conferred upon a class, class counsel is entitled to attorneys' fees based upon the benefit conferred. *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991) ("Attorneys in a class action in which a common fund is created are entitled to compensation for their services from the common fund, but the amount is subject to court approval."); *Boeing Co. v. Van Germert*, 444 U.S. 472, 478 (1980). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Columbus Drywall*, 2012 WL12540344, at *1 ("The Eleventh Circuit requires that attorneys' fees in common fund cases be determined using the percentage-of-the-fund approach, rather than the former 'lodestar/multiplier' approach."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1362 (S.D. Fla. 2011) (holding that the percentage of the fund is the exclusive method for awarding fees in common fund class actions). As discussed above, the nature and extent of the benefits achieved for the Class Members supports the requested fee.

In *Camden I*, the Eleventh Circuit provided a set of factors the Court may use to determine a reasonable percentage to award as an attorney's fee to class counsel: (1) the time and labor required; (2) the novelty and difficulty of the relevant questions; (3) the skill required to properly carry out the legal services; (4) the preclusion of other employment by the attorney as a result of his acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the clients or the circumstances; (8) the results obtained, including the amount recovered

for the clients; (9) the experience, reputations, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the clients; and (12) the awards in similar cases. 946 F.2d at 772 n.3 (citing factors in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)). These factors are guidelines and are not exclusive. The Court may also consider the time required to reach a settlement, whether there are any substantial objections to the settlement terms or requested fees, any non-monetary benefits to the class, and the economics of prosecuting a class action. *Id.* at 775. As applied here, the *Camden I* considerations support approval of the requested fee.

a. The "most important factor" in determining the appropriate fee award in a common fund case is generally considered to be "the results obtained" for the class. *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F.Supp.2d 1185, 1204-05 (S.D. Fla. 2006); *see also Hensely v. Eckerhart*, 461 U.S. 424, 436 (1983) ("critical factor is the degree of success obtained"); *Behrens v. Wometco Enters, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). Here, the Settlement provides complete relief for the Class Members' duty-to-assess claims and provides them valuable information about whether their properties have suffered diminished value or not. In addition, any Class Members determined to have suffered diminished value will receive full payment for the diminished value, which is complete relief for their duty-to-pay claims. Thus, the Settlement provides the relief that the litigation was filed to obtain. Without Class Counsel's efforts, it is quite possible that the Class would not have obtained any relief whatsoever. The strong results achieved here support the requested fee.

b. Class Counsel invested substantial time and effort to achieve a favorable result for the Class, including investigating the claims against State Farm and its affiliates; drafting the complaint; engaging in written discovery, including propounding and responding to discovery, negotiating the

scope of discovery with counsel for State Farm, and reviewing documents produced by State Farm; conducting informal discovery; devoting significant time negotiating the settlement as well as to the preliminary approval process and, most recently, to the final approval process. In total, Class Counsel has expended over 10,000 hours in prosecuting the case and in connection with the Settlement. Doc. 209-1. These efforts readily justify the requested fee.

c. "Attorneys should be appropriately compensated for accepting complex and difficult cases." *Columbus Drywall*, 2012 WL 12540344, at *3 (citations omitted). "It is common knowledge that class action suits have a well deserved reputation as being most complex." *Cotton*, 559 F.2d at 1331. "Undesirability" and the risks and difficulty of the litigation should be evaluated from the standpoint of class counsel when they commenced the suit—not retroactively, with the benefit of hindsight. *See In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984); *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 258 (7th Cir. 1988) (The point at which a settlement is reached is not relevant to determining the risks incurred by counsel). Throughout the litigation, State Farm has disputed liability and Class Members' entitlement to damages, having raised multiple defenses and dispositive motions. The Court also denied Plaintiffs' motion for summary judgment as to the availability of monetary damages for State Farm's breach of its duty to assess, and when the parties reached this Settlement, the issue of the exact contours of the injunctive and declaratory relief to which the Class Members might be entitled was still pending. In light of this uncertainty, the fact that Class Counsel negotiated relief weighs strongly in favor of approving the requested amount for Class Counsel's attorneys' fees and expenses.

d. "The appropriate fee should also reflect the degree of experience, competence, and effort required by the litigation." *Columbus Drywall*, 2012 WL 12540344, at *4. The prosecution of any complex class action requires unique legal skills and abilities that are to be considered when determining a reasonable fee. *See Edmonds v. United States*, 658 F. Supp. 1126, 1137 (D.S.C.

1987). "[T]he Court should consider the quality of the opposition, as well." *Columbus Drywall*, 2012 WL 12540344, at *4. This case presented difficult questions, which required commensurate skill to litigate the case properly. Class Counsel has extensive experience litigating and settling complex and class action litigation in state and federal courts. Doc. 209-2. Class Counsel's skill and extensive experience and reputation were important to achieving the strong result for the Class here. In addition, State Farm was represented by highly skilled and experienced counsel, Eversheds Sutherland, underscoring the skill required of and displayed by Class Counsel. *See Smith v. Krispy Kreme Doughnut Corp.*, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) ("Additional skill is required when the opponent is a sophisticated corporation with sophisticated counsel."). The skill and experience required of and demonstrated by Class Counsel further supports the reasonableness of the fee requested.

e. "The customary fee in class actions is a contingency fee, because it is not practical to find any individual that will pay attorneys on an hourly basis to prosecute the claims of numerous strangers and take on the significant additional expenses of fighting with the defendants over class certification." *Columbus Drywall*, 2012 WL 12540344, at *4 (citations omitted). "Courts are encouraged to look to the private marketplace in setting a percentage fee." *Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d at 1340 (citations omitted). "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. Contingent fees between 30% and 40% "are the prevailing market rates throughout the United States for contingent representation." *Pinto*, 513 F.Supp.2d at 1341; *In re Public Serv. Co. of N.M.*, 1992 WL 278452, at *7 (S.D. Cal. July 28, 1992) (customary contingency fee in a non-representative action is in the range of 30% to 40% of the recovery).

The value of the benefit achieved is not subject to calculation at this time because the diminished value assessments must be made before payments are determined. Instead, Class Counsel submits its lodestar, which is a reasonable alternative to evaluate the reasonableness of Class Counsel's requested fees and expenses. *See, e.g.*, *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). Class Counsel's adjusted lodestar is $5,487,332.50, based on over 10,000 hours of time expended in prosecuting and settling the case, which were reasonable and necessary and expended for the benefit of the Class Members. Doc. 209-2. Class Counsel also incurred out-of-pocket expenses of $656,767.24 in pursuing this case. Doc. 209-1. Subtracting these expenses from the requested $6.7 million award is $6,043,232.76 in fees, which is a multiplier of 1.1 on Class Counsel's lodestar of $5,487,332.50, making Class Counsel's request reasonable.

f. The contingent nature of the fee and the fact that the risks of failure and nonpayment in a class action are extremely high are significant for purposes of determining if a fee award is appropriate. *See Pinto v. Princess Cruise Lines, LTD*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *Ressler*, 149 F.R.D. at 656 ("Numerous cases recognize that the attorney's contingent fee risk is an important factor in determining the fee award."). Indeed, contingency fee arrangements often justify an increase in the attorneys' fees awarded. *See In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1335 (S.D. Fla. 2001). As courts in this Circuit have indicated:

> This rule helps assure that the contingency fee arrangement endures. If the "bonus" methodology did not exist, very few lawyers could take on the representation of a class client given the investment of substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Behrens*, 118 F.R.D. at 548 (citations omitted); *see also Columbus Drywall*, 2012 WL 12540344, at *5; *see also Allapattah Servs., Inc.*, 454 F.Supp.2d at 1217 ("Absent an award of fees that adequately compensates Class Counsel, the entire purpose and function of class litigation under Rule 23 ... will be undermined...."). Moreover, "[t]he relevant risks must be evaluated from the standpoint of

Plaintiffs' counsel as of the time they commenced the suit and not retroactively with the benefit of hindsight." *Pinto*, 513 F.Supp.2d at 1340. Here, Class Counsel prosecuted this matter on a purely contingent basis, agreeing to advance all necessary expenses and agreeing they would only receive a fee if there was a recovery. Class Counsel assumed considerable risk in pursuing this litigation. Class Counsel received no compensation during the course of this litigation, incurring over $5,487,332.50 in unpaid fees (using the lodestar method) and $656,767.24 in unreimbursed expenses. Docs. 209-1; 209-2. Moreover, Class Counsel expended these resources despite the risk that they may never be compensated at all. The risks borne by Class Counsel support the award of the requested fee.

g. The fee sought here is at the low end of fees typically awarded in similar litigation. *E.g.*, *Ottaviano v. Nautilus Ins. Co.*, 717 F. Supp. 2d 1259, 1264 (M.D. Fla. 2010) (holding that a multiplier of 2.5 on plaintiff's counsel's lodestar was reasonable); *GEICO Gen. Ins. Co. v. Baena*, 2013 WL 12200597, at *6 (S.D. Fla. 2013) (same). Class Counsel's adjusted lodestar is $5,487,332.50, based on over 10,000 hours of time expended in prosecuting and settling the case, which were reasonable and necessary and expended for the benefit of the Class Members. Doc. 209-2. Class Counsel also incurred out-of-pocket expenses of $656,767.24 in pursuing this case. Doc. 209-1. Subtracting these expenses from the requested $6.7 million award is $6,043,232.76 in fees, which is a multiplier of 1.1 on Class Counsel's lodestar of $5,487,332.50, making Class Counsel's request reasonable.

h. Courts consider whether a lawyer may vary his or her fee for similar work in anticipation of obtaining repeat business with an established client. *Columbus Drywall*, 2012 WL 12540344, at *6 (quoting *Johnson*, 488 F.2d at 719). Class Members are not "in a position to promise future business . . . that would somehow offset" the time Class Counsel invested in this case. *Id.* Class

Counsel's compensation for the risk of handling this litigation must come from the Settlement "rather than future business from these clients." *Id.*

 i. Positive Class Member response indicates support of the Class. *See Pinto*, 513 F. Supp. 2d at 1343. Here, only 265 Class Members (0.1%) have opted out. Doc. 211 at 10. Positive response from the Class Members evidences the fairness, reasonableness, and adequacy of the Settlement. *See Saccoccio*, 297 F.R.D. at 694 ("[A] low number of objections suggests that the settlement is reasonable."); *In re Motorsports Merchandise Antitrust Litig.*, 112 F. Supp. 2d at 1338 ("The lack of objection . . . suggests the terms are satisfactory. . . ."). Furthermore, only six Class Members have purported to object to the settlement. Docs. 210; 211-2; 211-3; 212-1; 212-2. As discussed above, those objections are groundless.

 j. "It is appropriate to reimburse the out-of-pocket expenses of counsel whose efforts created substantial benefit for the class." *Columbus Drywall*, 2012 WL 12540344, at *7 (citing *Camden I*, 946 F.2d at 771; *In re Domestic Air Transp.*, 148 F.R.D. at 348). Class Counsel is entitled to request, and State Farm has agreed to pay, subject to Court approval, expenses and costs of litigation. Here, Class Counsel seeks reimbursement of expenses incurred in the prosecution and settlement of this action in the total amount of $656,767.24. The Court finds that these expenses were reasonable and necessary to prosecute the case and obtain the Settlement.

 16. **Incentive Awards**. The Court finds that incentive awards in the amounts of $10,000 for the Thompsons ($5,000 each) and $5,000 for the Longs ($2,500 each) are fair, reasonable and appropriate, and directs that State Farm pay such amounts to the Plaintiffs pursuant to the terms of the Settlement Agreement. Pursuant to the Settlement Agreement, the payment of such incentive awards is in addition to the benefits to the Settlement Classes and will not reduce the benefits obtained by, or any Diminished Value damage payments made to, the Settlement Classes under the terms of the Settlement.

17.    **Modification of Settlement Agreement.**  The Settling Parties are hereby authorized, without further approval from the Court, to agree to and adopt such amendments, modifications, and expansions of the Settlement Agreement, provided that such amendments, modifications, and expansions of the Settlement Agreement are not materially inconsistent with this Order and the accompanying Judgment and do not materially limit the rights of Settlement Class Members under the Settlement Agreement.

18.    **Retention of Jurisdiction.**  The Court has jurisdiction to enter this Order and the accompanying Judgment.  Without in any way affecting the finality of this Order and the accompanying Judgment, this Court expressly retains exclusive and continuing jurisdiction as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, and of this Order and the accompanying Judgment, and for any other necessary purposes, including, without limitation:

a. enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims, or causes of action that, in whole or in part, are related to or arise out of the Settlement Agreement, this Order, or the Judgment (including, without limitation, whether a person or entity is or is not a Settlement Class Member, and whether  claims or causes of action allegedly related to the Actions are or are not barred by the Judgment or Releases);

b. entering such additional orders as may be necessary or appropriate to protect or effectuate this Order and the Judgment approving the Settlement Agreement, to dismiss all claims with prejudice, or to ensure the fair and orderly administration of this Settlement; and

c. entering any other necessary or appropriate orders to protect and effectuate this Court's retention of continuing jurisdiction.

19.    **Dismissal of Actions.**  The claims by the Settling Parties and all other Settlement Class Members are hereby dismissed with prejudice as against State Farm, without fees or costs to

State Farm except as set forth herein or in the Settlement Agreement.

20.  **Entry of Judgment.**  Because it is in the best interests of the Settlement Class Members that the settlement process be undertaken as soon as possible and because the Settlement Agreement resolves all claims by the Settlement Class Members, the Court finds that there is no just reason to delay the Judgment regarding the Settlement Agreement.  Accordingly, the Court expressly directs that the Judgment regarding the Settlement Agreement be entered as to all parties and all claims in the Actions.

**SO ORDERED** this 14th day of January, 2019.

/S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT